UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY SANDOVAL | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-02222 |
| | § | |
| W&T OFFSHORE, INC., and | § | |
| PHIL GUILBEAU OFFSHORE, INC. | § | |
| | § | |
| Defendants | § | |

**PLAINTIFF'S COMBINED RESPONSE TO DEFENDANTS' MOTIONS FOR CONTEMPT**

The Court should deny Wood Group's[1] Motions for Contempt (Doc. Nos. 93 and 94) for the following reasons:

1. This is a personal injury case where Anthony Sandoval suffered severe and debilitating injuries while being transferred by personnel basket, operated by a crane, from an offshore platform to a transport vessel. The crane was operated and supervised by Wood Group. Discovery for this case is ongoing and to be completed by June 7, 2022.

2. Wood Group issued Rule 45 subpoenas to Mr. Sandoval's treating providers, Dr. Masaki Oishi and Kraus Neck and Back Institute (collectively "Kraus"), and Altus Houston Hospital, L.P. ("Altus")—both non-parties. Wood Group now alleges that Kraus and Altus—the non-parties—did not fully comply with the subpoenas, and as a remedy seeks to sanction Mr. Sandoval, who could not have disobeyed the subpoenas addressed to non-parties. *See e.g.*, *Ibarra v. Baker*, 338 F. App'x 457, 471 (5th Cir. 2009) ("[A party] could not have disobeyed the subpoena [issued to a non-party] if it did not require him to act, and the district court therefore abused its discretion insofar as it sanctioned [that party]."). A trial court's imposition of sanctions is reviewed for abuse of discretion and a contempt order is immediately appealable. *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410-11 (5th Cir. 1993) (internal citations omitted).

3. Wood Group effectively seeks sanctions against Mr. Sandoval—by excluding evidence of his medical treatment and damages—for alleged issues with a third-party subpoena. While the Court has inherent power to address discovery issues,

[1] Plaintiff refers to Defendants Wood Group PSN, Inc.; Wood Group US, International, Inc.; and Wood Group USA, Inc. collectively as "Wood Group" throughout this pleading.

the Fifth Circuit explains that "it is unclear whether the inherent power to sanction discovery abuses extends to abuses committed by non-parties." *Nat. Gas Pipeline*, 2 F.3d at 1411. That is, even assuming for argument that Kraus and/or Altus (the non-parties) failed to comply with the subpoenas—which is not the case—the Court could only sanction the non-party under extreme circumstances. Tellingly, Wood Group does not seek sanctions against Kraus or Altus—the non-parties—but instead seek to sanction Mr. Sandoval by excluding evidence of his medical treatment. There is absolutely no basis to sanction Mr. Sandoval who was never subject to the subpoenas and did not violate any subpoena or Order of this Court.

4. Wood Group's Rule 45 subpoenas are unduly burdensome and seek information that is neither relevant nor proportionate to issues in the underlying action. Wood Group's subpoenas are improper attempts to obtain privileged information and information outside the scope of discovery. In a recent opinion, the Court for the Western District of Texas addressed a similar situation where the defendants in a personal injury case sought to subpoena irrelevant medical billing information from a non-party medical provider. *See generally*, *In re Interventional Pain Associates, P.A.*, 510 F. Supp.3d 448 (W.D. Tex. 2021). After analyzing the applicable law, the Court held that the law "does not require [the non-party provider] provide Defendants with the requested discovery" and denied the defendants' irrelevant discovery requests. *See id.* at 452. The reasoning applied in *In re Interventional Pain Associates* is sound and should be adopted in this case.

## I.

## BACKGROUND

On May 10, 2019, Mr. Sandoval was working for Performance Energy Services ("PES") as a scaffold-builder and was injured while working on a W&T Offshore platform. Mr. Sandoval was injured when he was being carried in a personnel basket from the platform to the transport vessel *M/V LUCAS JOHN* operated and manned by Defendant Phil Guilbeau Offshore, Inc. The personnel basket is lifted by a crane and controlled by the crane operator. As Mr. Sandoval was being transferred in the personnel basket, the crane operator (working for Wood Group) dropped the personnel basket to the deck. Mr. Sandoval was seriously injured.

As a result of the injuries sustained, Mr. Sandoval became a patient of Kraus and Altus. Mr. Sandoval has undergone two surgeries, both performed by Dr. Oishi at Altus Hospital. The first surgery was a lumbar artificial disc placement on October 1, 2020 and the second being a

cervical fusion which took place on May 13, 2021. *See* Ex. A: Dr. Oishi Operation Report and Notes. Kraus specializes in surgical and non-surgical treatments of back and neck pain for their patients. Altus is a hospital serving the Houston community since 2017.

On July 20, 2021, Wood Group issued a subpoena to Kraus comprising 31 questions. *See* Doc. No. 93-4 at pp. 4-7. On September 3, 2021, Wood Group issued another subpoena to Altus comprising 22 questions. *See* Doc. No. 94-4 at pp. 4-6. Both subpoenas are very similar and share a common theme: seeking information on "all patients" of these two medical providers. Of the 31 Requests to Kraus, only Requests 1-3 had anything to do with Mr. Sandoval. *See* Doc. No. 93-4 at pp. 4-7. Similarly, of the 22 Requests to Altus, only Request No. 1 had anything to do with Mr. Sandoval. Wood Group's subpoena sought, among other things, "A list of or copies of your records showing **all patients** treated that were engaged in litigation at the time any treatment was rendered from 2016 to the date of your response to this subpoena." *See* Doc. No. 93-4 at p. 4 Request No. 4; Doc. No. 94-4 at p. 4 Request No. 2. Wood Group's subpoena requests information unrelated to the actual medical care Mr. Sandoval received from Kraus or Altus. Instead, Wood Group seeks information on "**all patients**" of Kraus and Altus, merely because these two medical providers treated Mr. Sandoval. A subpoena presents an undue burden when the subpoena is facially overbroad. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Wood Group's unreasonable subpoenas are overbroad and seek irrelevant information on their faces.

## II.

## ARGUMENT

1. **Sanctions are not appropriate against Mr. Sandoval because he did not violate subpoenas or Orders of the Court.**

Wood Group is effectively seeking to penalize Mr. Sandoval for the alleged non-compliance of two non-party medical providers responding to document subpoenas. The law does not support such relief and neither does common sense.

Federal courts may sanction a party under its inherent powers "[w]hen a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute." *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Nat. Gas Pipeline*, 2 F.3d at 1406). Nevertheless, "the threshold for the use of inherent power sanctions is high." *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) (quoting *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995)) (internal quotation marks omitted). Thus, there must be a "specific finding that the party acted in bad faith" to sanction a party under the Court's inherent powers. *Arnold v. Fed. Nat. Mortg. Ass'n*, 569 Fed. Appx. 223, 224 (5th Cir. 2014) (per curiam) (unpublished) (quoting *Crowe*, 151 F.3d at 236) (internal quotation marks omitted).

Here, Wood Group alleges non-parties failed to comply with document subpoenas. In this context, the standard to sanction a party (for the alleged discovery failures of a non-party) is an even higher standard. Specifically, "it is unclear whether the inherent power to sanction discovery abuses extends to abuses committed by non-parties." *Nat. Gas Pipeline*, 2 F.3d at 1411. Indeed, consistent with the *Nat. Gas Pipeline* holding, courts have held that sanctions cannot be imposed on a party who has done nothing wrong. *See e.g.*, *Ibarra*, 338 F. App'x at 471 (holding "[a party] could not have disobeyed the subpoena if it did not require him to act, and the district court therefore abused its discretion insofar as it sanctioned [that party]"); *Orion Marine Constr., Inc. v. Coyle*, No. 4:17-CV-00522, 2017 WL 4875596, at *6 (S.D. Tex. Oct. 26, 2017) (holding that a non-party expert's conduct cannot be basis to sanction a party).

In fact, Wood Group misinterpreted the only case cited to support their baseless position. *See* Doc. Nos. 93 and 94 at pp. 6-7 (citing *In re Rosenthal*, No. CIV.A. H-04-186, 2008 WL 983702, at *5 (S.D. Tex. Mar. 28, 2008), vacated *sub nom. Ibarra v. Baker*, 338 F. App'x 457 (5th Cir. 2009)). In *In re Rosenthal*, the court promptly denied a motion for contempt as to Graham (one of the two respondents) because "[t]here is no evidence that Herbert E. Graham engaged in any conduct that violated the subpoena or Orders of the Court." *In re Rosenthal*, No. CIV.A. H-04-186, 2008 WL 983702, at *1 footnote 1.

Here, Mr. Sandoval has done nothing that can be construed as sanctionable conduct. In fact, the subpoenas were not addressed to Mr. Sandoval, and thus he could not have disobeyed them. *See e.g.*, *Ibarra*, 338 F. App'x at 471. Therefore, "the sanction of the exclusion of evidence and testimony from Kraus at the trial of this matter" or "a remedy that sufficiently addresses the recalcitrant behavior of an entity affiliated with the Plaintiff"—sought by Wood Group—is baseless and not support by fact or law. *See* Doc. No. 93 at p.6; *see also* Doc. No. 94 at p. 6. The Court should deny Wood Group's Motions in their entireties.

**2. The Court should sustain the non-party providers' objections because Wood Group's subpoenas impermissibly seek irrelevant and privileged information and are not proportionate to issues in this case.**

Wood Group's subpoenas seek information totally irrelevant and unrelated to the claims and defenses in this case. Additionally, the subpoenas seek protected health information from an untold number of other individuals who were or are patients with Kraus and Altus. This type of information is not discoverable.

The Court should limit discovery if it "is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit—and the court must do so even in the absence of a motion." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 284 (N.D. Tex. June 26, 2017) (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)). Rule 26(b)(2)(C) explains that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Samsung*, 321 F.R.D. at 284 (quoting FED. R. CIV. P. 26(b)(2)(C)).

Further, "[u]nder Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements." *Id.* at 279. Discovery from a third party as permitted through a subpoena issued under Rule 45 is limited to the scope of discovery permitted under Rule 26(b)(1) in the underlying action, and "[d]iscovery outside of this scope is not permitted." *Garcia v. Professional Contract Servs., Inc.*, No. A-15-cv-585-LY, 2017 WL 187577, at *2 (W.D. Tex. Jan. 17, 2017); *see also Arthur J. Gallagher & Co. v. O'Neill*, Civ. A. No. 17-2825, 2017 WL 5713361, at *2 (E.D. La. Nov. 27, 2017) (explaining that "subpoenas duces tecum are discovery devices governed by Rule 45 but also subject to the parameters established by Rule 26" and that a "court retains discretion to decline to compel production of requested documents when the request exceeds the bounds of fair discovery, even if a timely objection has not been made" (internal quotation marks omitted)).

The Court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *MetroPCS v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018) (quoting *Wiwa*, 392 F.3d at 818). "Courts have found that a subpoena for documents from a non-party is facially

overbroad where the subpoena's document requests seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited." *Id.* (quoting *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015)).

The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party. *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) (citing *Truswal Systems Corp. v. Hydro–Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)). Courts give special consideration to the burden posed when subpoenas are sent to nonparties. *See Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 772859, at *2 (N.D. Tex. Feb. 27, 2014); *Scrum All. Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 6559625, at *1 (E.D. Tex. Nov. 9, 2020). A subpoena can be unduly burdensome even if no non-party complains. *See id.*

Despite these rules, Wood Group's subpoenas seek:

> 4. A list of or copies of your records showing all patients treated that were engaged in litigation at the time any treatment was rendered from 2016 to the date of your response to this subpoena.
>
> 5. Copies of your records showing the number of patients treated engaged in litigation as a percentage of your total patients from 2016 to the date of your response to this subpoena.
>
> 6. A list of or copies of your records showing all law firms from which you have received patient referrals from or whose clients you have provided treatment from 2016 to the date of your response to this subpoena.
>
> 7. Copies of your records showing the fees that you billed for treatment rendered to patients engaged in litigation from 2016 to the date of your response to this subpoena.
>
> 8. Copies of your records showing the total fees collected for treatment rendered to patients engaged in litigation from 2016 to the date of your response to this subpoena.
>
> 9. Copies of your records showing the revenue received by you for treatment rendered to patients engaged in litigation as a percentage of total revenue from 2016 to the date of your response to this subpoena.

Doc. No. 93-4 at p. 4.

2. A list of or copies of your records showing all patients treated by you or at your facilities that were engaged in litigation at the time any treatment was rendered from 2016 to the date of your response to this subpoena.

3. Copies of your records showing the number of patients treated at your facilities engaged in litigation as a percentage of your total patients from 2016 to the date of your response to this subpoena.

4. A list of and copies of your records showing all law firms from which you have received patient referrals from or whose clients you have provided treatment to from 2016 to the date of your response to this subpoena.

5. Copies of your records showing the fees that you billed for treatment rendered to patients engaged in litigation from 2016 to the date of your response to this subpoena.

6. Copies of your records showing the total fees collected for treatment rendered to patients engaged in litigation from 2016 to the date of your response to this subpoena.

7. Copies of your records showing the revenue received by you for treatment rendered to patients engaged in litigation as a percentage of total revenue from 2016 to the date of your response to this subpoena.

8. Copies of your records showing all revenue received by you from law firms or attorneys as a percentage of total revenue from 2016 to the date of your response to this subpoena.

9. Copies of your records showing the payor and/or source of the fees collected for treatment rendered to patients engaged in litigation from 2016 to the date of your response to this subpoena.

Doc. No. 94-4 at p. 4.

In fact, of the total 53 topics in the two subpoenas, only 4 topics relate to Mr. Sandoval or this case. The Court should sustain Kraus and Altus's objections in their responses and quash Wood Group's subpoenas.

In a recent opinion, the Court for the Western District of Texas addressed a similar situation where the defendant in a personal injury case sought to subpoena irrelevant medical billing information from a non-party medical provider. *See generally*, *In re Interventional Pain Associates*, 510 F.Supp.3d. After analyzing the applicable law, the Court held that the law "does not require [the non-party provider] provide Defendants with the requested discovery" and quashed the defendants' subpoena. *See id.* at 452.

The defendants in *In re Interventional Pain Associates* sought documents related to the non-party provider's treatment of the plaintiff as well as its generic patient accounting and financial practices. *See id.* at 449. The Court specifically noted that the defendants sought "'All Documents

and Records Relating to Policies, Procedures, and Protocols or Patient Accounting and Financial Practices at [the non-party medical provider].'" *Id.* In addition, the defendants—similar to this case—sought information on unrelated patients and any potential agreements between the non-party provider with the plaintiff's counsel. *Id.* at 450. The Court in *In re Interventional Pain Associates* found that the non-party's policy and rates from other patients were irrelevant to the plaintiff's action and the defendants' document subpoena was "neither relevant nor proportional to the needs of the case." *Id.* at 452. The Court granted the non-party provider's motion for protective order. Here, Wood Group's document subpoenas are even more flagrant egregious—only 4 out of 53 requests have anything specific to Mr. Sandoval—in seeking information completely outside the permitted scope. The reasoning applied in *In re Interventional Pain Associates* is sound and should be adopted in this case.

Finally, information relating to other patients of Kraus and Altus is privileged information not subject to production—especially in an unrelated personal injury case. Although there is no physician-patient privilege under federal statutes, rules or common law, Texas recognizes a physician-patient privilege under Texas Rule of Evidence 509. *See Gilbreath v. Guadalupe Hosp. Foundation, Inc.*, 5 F.3d 785, 791 (5th Cir. 1993); *R.K. v. Ramirez*, 887 S.W.2d 836, 840 (Tex. 1994); *McGowan v. O'Neill*, 750 S.W.2d 884, 886 (Tex. App.—Houston [14th Dist.] 1988, no writ). Federal courts apply applicable state laws of physician-patient privilege. *See* FED. R. EVID. 501. Specifically, medical providers like Kraus and Altus are not permitted to disclose protected medical or financial information concerning other patients pursuant to the Health Insurance Portability and Accountability Act of 1996 "HIPAA" and other relevant laws. *See* TEX. R. EVID. 509; Texas Health & Safety Code Chapter 181 and 241, Subchapter G; Texas Occupations Code Chapter 159; and the Health Insurance Portability and Accountability Act of 1996, Pub. L. No.

104-191, 110 Stat, 1936 (1996) ("HIPAA") and its rules found at 45 CFR Part 160 and Part 164 (the "HIPAA Privacy Rules"). Simply redacting certain personal information does not remedy the fact that the healthcare and financial information of other unrelated patients is being provided in litigation without the permission of or notice to those unrelated patients, who are the holders of the physician-patient privilege. *See* TEX. R. EVID. 509(d).

In summary, Wood Group's Rule 45 subpoenas seek impermissible information that is overbroad and irrelevant to the underlying case and is protected by physician-patient privilege. Therefore, the Court should sustain Kraus and Altus' objections and quash Wood Group's improper subpoenas *sua sponte*.

## III.

## CONCLUSION

Plaintiff respectfully requests that the Court deny Wood Group's Motions for Contempt (Doc. Nos. 93 and 94).

Respectfully submitted,

**ARNOLD & ITKIN LLP**

*/s/ Trevor Courtney*
Kurt B. Arnold
SBN: 24036150
karnold@arnolditkin.com
J. Kyle Findley
SBN: 24076382
kfinldey@arnolditkin.com
Trevor M. Courtney
SBN: 24125599 (*Pro Hac Vice*)
tcourtney@arnolditkin.com
6009 Memorial Drive
Houston, Texas 77007
(713) 222-3800- Telephone
(713) 222-3850 – Facsimile
e-service@arnolditkin.com
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 3, 2022, a true and correct copy of this motion was served on all counsel of record by uploading the same to the Court's CM/ECF System.

*/s/ Trevor Courtney*
Trevor Courtney