**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| **ANTHONY SANDOVAL** | |
| **v.** | **CIVIL ACTION NO. 4:19-CV-02222** |
| **W&T OFFSHORE, INC., ET AL.** | |

**REPLY MEMORANDUM**
**IN SUPPORT OF MOTIONS FOR CONTEMPT**

Defendants, Wood Group PSN, Inc., Wood Group US International, Inc., and Wood Group USA, Inc. (collectively "Wood Group"), respectfully submit this Reply Memorandum in support of their Motions for Contempt to address the contentions raised by Plaintiff, Anthony Sandoval ("Sandoval"), in Plaintiff's Combined Response to Defendants' Motions for Contempt ("Response") filed in response to Wood Group's Motions for Contempt.[1]

As an initial matter, undersigned counsel has been in contact with counsel for Dr. Masaki Oishi and Kraus Neck and Back Institute (collectively "Kraus") regarding this matter, and undersigned counsel is working with counsel for Kraus on its response to Wood Group's subpoena.[2] Wood Group nonetheless maintains its request for relief as it has yet to receive any responsive information from Kraus.

## I. PLAINTIFF'S COUNSEL HAS NO AUTHORITY TO ACT ON BEHALF OF THE KRAUS OR ALTUS.

Plaintiff's counsel *does not represent* Kraus or Altus Houston Hospital, L.P. ("Altus"). Thus, Plaintiff has no authority to make representations to this Court on behalf of Altus or Kraus.

---

[1] R. Docs. 93, 94.
[2] Exhibit 1, email correspondence from counsel for Kraus.

Plaintiff has plainly stated to the defendants in this case that he has no relationship to Altus or Kraus and does not represented them.[3] Plaintiff's counsel has also not made an appearance in this matter on behalf of either. It is unclear why Plaintiff's counsel suggests that he represents their interests at multiple points in his Response.

Furthermore, despite numerous references to "providers' objections," neither Kraus nor Altus objected to Wood Group's subpoenas or offered any opposition to Wood Group's Motions to Compel.[4] In the case of Kraus, Plaintiff's Response contradicts the position of Kraus's *actual* attorney who has been in contact with undersigned counsel to resolve the issues related to Wood Group's subpoena.[5] Lastly, any objections to Wood Group's subpoenas have long since been waived by the failure of Altus or Kraus – or Plaintiff – to object to the subpoenas or Wood Group's Motions to Compel.[6]

## II. **THE INFORMATION SOUGHT BY WOOD GROUP IS RELEVANT AND DISCOVERABLE.**

As this Court is well aware, Kraus and Altus initially ignored federal subpoenas calling for the production of evidence relative to medical expense damages, and thereafter, ignored this Court's February 1, 2022, Orders directing Kraus and Altus to respond to Wood Group's subpoenas without objections within ten (10) days.[7] Kraus and Altus' elections to ignore the subpoenas and the Court's Orders ultimately forced Wood Group to file the referenced Contempt Motions considering that the healthcare providers' failure to respond has significantly impacted necessary discovery and trial preparation.[8]

---

[3] Exhibit 2, *en globo*, email correspondence with Plaintiff's counsel.
[4] R. Docs. 73, 74.
[5] Exhibit 1, email correspondence from counsel for Kraus.
[6] R. Docs. 73, 74.
[7] R. Docs. 81, 82.
[8] R. Docs. 93, 94.

As reflected in Wood Group's Memorandums in Support of Motions for Contempt, Sandoval alleges past medical expense damages in excess of $650,000. While defendants contend that Sandoval's medical treatment was unnecessary, defendants likewise contend that Sandoval's past medical expense damages are inflated, excessive, and unreasonable. Note that Sandoval ignored a viable first party longshore/workers' comp claim and elected to receive medical treatment from Kraus and Altus on a lien basis in lieu of an insurance basis.[9] In doing so, Sandoval avoided all discounting allowed by the applicable longshore fee schedule. Thus, Sandoval's claim for past medical expense damages in excess of $650,000 is based solely upon the amounts billed/charged and *not* amounts paid/accepted as payment in full.

Sandoval has likewise used his inflated past medical expense damages to create a lifecare plan that has produced inflated future medical expense damages. Given Sandoval's conduct, Wood Group served Sandoval's healthcare providers, Kraus and Altus, with the above referenced subpoenas calling for the production of amounts billed and amounts paid and/or accepted as payment for medical services rendered.

While Wood Group acknowledges that a plaintiff who prevails in a personal injury action may recover the *reasonable* value of necessary medical treatment as special damages, the issue here is by what standard do we determine the *reasonableness* of medical expenses? Is it (a) the amounts billed by plaintiff's treating healthcare providers (regardless of how much they collection) or is it (b), the amounts actually paid/accepted as payment for medical services? While the answer to this question depends in part on what law applies, a similar answer is reached under Texas, Louisiana, and maritime law.

[9] Plaintiff, as a worker on the Outer Continental Shelf, is a covered worker under the Longshore Harbor Workers' Compensation Act.

In *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352 (5th Cir. 2016), the U.S. Fifth Circuit considered whether the collateral source rule allowed plaintiffs to recover the amount billed or the amount paid by a non-tortfeasor employer pursuant to the LHWCA. *Id.* at 359. Noting that there is no direct authority regarding the treatment of written-off LHWCA medical expenses in the maritime tort context, the U.S. Fifth Circuit looked to state and analogous maritime authority. Note that after doing so, the court concluded that "LHWCA medical-expense payments are collateral to a third-party tortfeasor only to the extent paid; in other words, under those circumstances, plaintiff may not recover for expenses billed, but not paid; in other words, under those circumstances, plaintiffs may not recover for expenses billed, but not paid." *Id.* at 361.

While the *Deperrodil* court's evaluation was performed in a maritime context much like the one that exists here, the same result would be had under Texas law. In the space of six months during 2021, the Texas Supreme Court issued two opinions confirming that trial courts are required to compel personal injury plaintiffs and their third-party medical providers to produce actual data establishing the amounts that the medical providers have accepted as payment for relevant/necessary medical treatment. In the case of *In re K & L Auto Crushers*, 627 S.W.3d 239, 247 (Tex. 2021), *reh'g denied* (Sept. 3, 2021), the Texas Supreme Court, overturning the trial court, held that a personal injury defendant may discover information regarding "the amounts the providers usually charge and accept as payment …" *Id.* at 255. For emphasis, the Texas Supreme Court repeated itself in *In Re ExxonMobil Corp.*, 635 S.W.3d 631, 633 (Tex. 2021) just a few month later. Thus, in May and November 2021, the Texas Supreme Court clearly affirmed the relevance of the exact information sought by Wood Group's subpoenas.

But the Texas Supreme Court went further and described the applicable standard to determine the *reasonable* value of necessary medical services. More specifically, through *K & L*

*Auto Crushers* and *ExxonMobil Corp.*, the Texas Supreme Court set forth three principles governing medical expense damages in personal injury cases. Those principles include:

> 1. The health care provider is only entitled to recover the reasonable value of its medical necessary services from the injured party. Thus, the defendant, if liable, is only required to pay the plaintiff the reasonable value of the provider's medically necessary services caused by the event.
>
> 2. A provider's billed charges are <u>not</u> a reliable indicator of the reasonable value of medical services. Amounts accepted by the provider as payment in full for its services are relevant to determine reasonable value.
>
> 3. A party defendant that may be liable to pay a plaintiff in a personal injury case has a right to reasonable discovery from the provider of amounts the provider has accepted or agreed to accept as payment in full to determine the reasonable value of the service. The discovery should not impose an unnecessary or unreasonable burden on the provider. Thus, if the information is available from a public source (e.g., Medicare allowed amount), the provider should not have to produce the information.

In applying the Texas Supreme Court principles set forth in *K & L Auto Crushers* and *ExxonMobil Corp.* to Sandoval's case, the "billed charges" regarding past medical expenses exceeding $650,000 are <u>not</u> a reliable indicator of the reasonable value of medical services rendered. Moreover, since Sandoval is deemed uninsured and is receiving medical lien services from his healthcare providers, Sandoval's payment of his past medical expenses will likely come at the end of the day following a settlement or judgment. Thus, Wood Group's discovery request seeking information regarding the amount accepted by Altus and Kraus in payment for services similar to those rendered to Sandoval is relevant and discoverable.

Additionally, while there have been no timely objections to Wood Group's subpoenas, Wood Group has no interest in the personally identifiable information of other patients of Altus and Kraus. Wood Group has no objection to redacting the names of patients and other personally

identifiable information which is not relevant to Wood Group's inquiry. Additionally, since evidence of amounts paid/accepted as payment in full is essential to the defense of the matter, Wood Group will gladly make the discovery less broad by moving the discovery date from 2016 to 2019, the year that Sandoval began treatment.

Thus, given the 2021 holdings of the Texas Supreme Court in *K & L Auto Crushers* and *ExxonMobil Corp.* and the U.S. Fifth Circuit in *Deperrodil*, Plaintiff's arguments that the discovery sought through Wood Group's subpoenas is irrelevant is unequivocally wrong. While Wood Group's request to exclude evidence is admittedly a radical remedial measure, Kraus and Altus' flagrant disregard with federal subpoenas and or this Court's orders are likewise radical omissions warranting radical remedial measures.

## III. PLAINTIFF HAS NO STANDING TO OBJECT TO WOOD GROUP'S SUBPOENAS.

Generally, a party lacks standing to challenge a subpoena issued to a third-party unless that person has a personal right or privilege with respect to the materials subpoenaed. *Guzman v. Latin Am. Ent., LLC*, No. 6:13-CV-41, 2014 WL 12599345, at *1 (S.D. Tex. July 2, 2014) (citing and quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Frazier v. RadioShack Corp.*, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012) ("As an initial matter, it should be noted that a plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights . . . , that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds."). Even when a plaintiff otherwise has standing, he has no objection on the grounds that the subpoena is unduly burdensome. *Schmidt Tr. of Est. of Border Anesthesia Servs., P.C. v. McKee*, No. CV B-10-20, 2012 WL 13137023, at *4 (S.D. Tex. Feb. 21, 2012).

Here, Plaintiff asserts no right or privilege with respect to the materials subpoenaed. Plaintiff does not claim that his own rights or privileges are at risk from Wood Group's discovery. This is in contravention to the cases relied on by the Plaintiff wherein the *recipient* of the subpoena objected. *See In re Interventional Pain Assocs., P.A.*, 510 F. Supp. 3d 448 (W.D. Tex. 2021) ("in *Ochoa*, *this Court denied the plaintiff's objections to similar discovery requests served on a nonparty medical provider*. . . . Importantly, the plaintiff, rather than the subpoenaed nonparty, opposed the discovery requests in Ochoa . . .") (emphasis added). To the contrary, Plaintiff's Response purports to protect and assert rights that *belong to others*. No standing exists for Plaintiff to assert such objections – especially when those parties have not done so themselves.

In addition to the distinction based on the status of the objecting party, in *Interventional Pain Associates, P.A.*, the court's decision to quash the nonparty subpoena was based primarily on the court's finding that the 2018 Texas Supreme Court case of *In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128 (Tex. 2018) did not apply to personal injury cases. *North Cypress* concerned a suit over a hospital lien in which the reasonableness of the amount the hospital charged and sought to recover was the central issue in the case, and thus, the reimbursement rates were discoverable. The *Interventional Pain Associates, P.A.* court concluded that *North Cypress* was factually limited and did not apply to personal injury cases. As such, the *Interventional Pain Associates, P.A.* court quashed the nonparty subpoena served upon the healthcare provider that sought medical billing information. As it was decided under Texas law, *Interventional Pain Associates, P.A.*, decided on January 4, 2021, would be impacted by the subsequent and contrary holdings of *K & L Auto Crushers* (May 28, 2021) and *ExxonMobil Corp.* (November 19, 2021) – both of which involved personal injury claims. As such, if the *Interventional Pain Associates, P.A.* were litigated today, the result would likely be quite different and consistent with two recent

Western District of Texas opinions calling for the production of medical expense evidence from nonparty healthcare providers. *See*, *Zuniga v. Tri-Nat'l, Inc.*, No. SA-20-CV-01417-ESC, 2022 WL 255427 (W.D. Tex. Jan. 27, 2022); *Acuna v. Covenant Transp., Inc.*, No. SA-20-CV-01102-XR, 2021 WL 5167295 (W.D. Tex. Nov. 4, 2021).

## IV. CONCLUSION

In connection with the foregoing, Wood Group respectfully requests that a representative of Altus be ordered to appear before this Court and explain under oath why the requested documents have not been produced. Considering that Sandoval's payment obligations do not arise until after a settlement or judgment, clearly Kraus and Altus have a financial interest in the outcome of the case. Ultimately, if Kraus and Altus continue to violate the Court's orders, Wood Group respectfully requests that the Court exercise its inherent powers in applying an appropriate remedial measure to the healthcare providers' flagrant violations of Court orders.

Respectfully submitted:

*/s/ Daniel B. Stanton*

John Jakuback
State Bar No. 24071604
**KEAN MILLER LLP**
711 Louisiana Street
Suite 1900 South Tower
Houston, TX 77002
Telephone: (713) 844-3000
Facsimile: (713) 844-3020
john.jakuback@keanmiller.com

Charles R. Talley (La. Bar 12634)
(Admitted *Pro Hac Vice*)
Daniel B. Stanton (La. Bar 35337)
(Admitted *Pro Hac Vice*)
**KEAN MILLER LLP**
First Bank and Trust Tower
909 Poydras St., Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
Facsimile: (504) 585-3051
chuck.talley@keanmiller.com
daniel.stanton@keanmiller.com

**Attorneys for Defendants Wood Group PSN, Inc., Wood Group US International, Inc., and Wood Group USA, Inc.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 10th day of June, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to those who are non-CM/ECF participants.

*/s/ Daniel B. Stanton*
**DANIEL STANTON**